Curia, per
Butler, J.
The judgment of the Recorder is rested entirely on the legal conclusion, which he deduced from the fact, that the distress warrant had been issued in the lifetime of the tenant. This proceeds on the notion that the landlord had thereby acquired a vested right in the nature of a lien, which would enable him to seize under his warrant the goods and chattels of his tenant, found on the demised premises after his death. If the issuing of a distress warrant can impart to it any of the attributes which attaches to a ji. fa. upon its lodgment in the sheriff’s office, the judgment below may, perhaps, be sustained.
By a positive provision of law, in the statute of frauds, the lien under a fi. fa. commences so soon as it is delivered to the sheriff to be executed, the proper evidence of which is an entry of its lodgment in his office. It is a judicial writ, issued to enforce a judgment, and does not derive its authority from the party interested in its execution. The danger arising from false entries is guarded against by the publicity of the proceeding, and the impartiality of official responsibility.
A distress warrant, being issued by the party exclusively interested, has none of these securities against abuse; and if the landlord’s right of preference to the effects of a deceased tenant depend upon the question whether he could establish the fact that such warrant had been issued, but not served, before the death, there is too much reason *516 to believe that fraud and perjury would be the common means of effecting it. Until its actual execution, there can be no legal resemblance between a distress warrant and a fieri facias. After an actual levy1 there may be an analogy in their operation. The true point of view in which a distress warrant is to be regarded, is that taken of it by Judge Earle, in the case of Bagnell vs. Jamieson, Cheves, 152. “It is nothing but a power of attorney. The bailiff- or other person executing the warrant, is only the agent of the landlord ; and the power, both in regard to the extent of the authority and its duration, is to be construed according to the law of principal and agent, except where regulated by statute.”
It never has been held that a mere naked power of attorney could operate as a lien in favor of the principal, or in favor of the agent, unless it be coupled with an interest in the nature of a conveyance. Such a power must always be affected by the death of the parties to it, or the parties to be affected by it. In the first case, the death of the principal will operate as an instantaneous revocation ; and in the other, where proceedings have been instituted against others, under a power, the death of such persons will operate to arrest and change the proceedings — as where a party dies after suit has been commenced against him, in such case the suit abates, and it must afterwards be conducted against other parties, the representatives of the deceased. The mere assertion of claim by action, would give the surviving plaintiff’s no preference over the other creditors who had commenced no action, but relied on the law for the disposition of the effects of the deceased.
The defendant before the court, had issued his warrant, (it would seem) before the death of Allen, his tenant, but had secured no actual right under it. His right might, possibly, have been resisted and defeated by his tenant, if he had lived. After his death, and when the defendant seized on the goods and chattels found on the premises, there was no one who occupied the position of a legal representative, upon whom had devolved the duty of protecting the rights of others.
It will not do to say that an administrator or executor would not have resisted the distress. They may have *517 done so, either in denial of plaintiffs’s right, or with a view of doing justice according to law to other creditors. The authority of the distress warrant, in the form in which it had been issued, terminated upon the death of the tenant; and after that time, the defendant occupied the position of a landlord claiming rent actually due before the dfeath of the tenant. Under such circumstances, could he claim any preference to have his rent paid, over the present plaintiffs, who claim to be compensated for the funeral expenses of the deceased'?
It is said that, under the statute of 3d H. 8th, the defendant still had his remedy by distress. It would seem that the 37th c. of that statute enables a landlord to dis-train against executors and administrators. See the case of Branthwaite vs. Cooksey and another, 1 H. Bl. 455. The statute never has been adopted expressly by any legislative act of South Carolina. It is not enumerated as one of the English statutes that have been made of force here; and in the case of Bagnel vs. Jamieson, Judge Earle says, “it never has been adopted here, either expressly by the Legislature, or by necessary implication;” and I am under the impression, though he does not expressly say so, that Judge Wardlaw, in his thorough examination of the English statutes in relation to rents, in the case of Rogers vs. Brown & Shorlock, 1 Speer’s Rep. came to the same conclusion. How far the practice under some of the provisions of that statute, or some other statute on the same subject, may be confirmed by judicial decisions hereafter to be made, I will not, at this time, undertake to say. That may be made a proper question when the case is presented to the court in which it fairly arises. I am not aware that such a practice would now benefit the defendant in the case before the court. For he did not, in fact, distrain against either executor or administrator of the deceased.
•If it should be contended that an executor,-contemplated by the statute, would include an executor de son tort, then the defendant had united in himself the character of both landlord and executor, and was incapable of carrying on adversary proceedings. At least, there was no one to represent the rights of other creditors in such a proceeding. I am persuaded, however, that the executors and ad *518 ministrators mentioned in the statute, are such as had been duly appointed, and such as would be bound, under official responsibility, to administer the effects of the deceased according to law. Suppose, then, the effects of Allen, the deceased, to have come into the hands of an administrator, and the defendant had claimed them, or their proceeds, for rent in arrear in the lifetime of his tenant, would his claim have been preferred to that of the plaintiffs, who had paid money in part, and had incurred other expenses about the burial and funeral of the deceased'? In such case, our Executors’s Act of 1789 would come in, and indicate the rights of the creditors, and impose on the administrator or executor the duty of paying them according to its provisions. The 26th sec. of that Act provides, that the debts due by any testator or intestate, shall be paid by executors and administrators, in the order following, viz : Funeral and other expenses of the last sickness; charges of probate of will or letters of administration ; next, debts due to the public; next, judgments, mortgages, and executions ; next, rent, (fee. (fee. It will be perceived that rent is postponed to three other classes of debts, whilst funeral-expenses is placed first. Decency and a just regard to the rights of humanity, should induce us, whenever we can, to preserve and maintain this preference.
The most that the defendant can or ought to claim, is to occupy the position of a rightful executor. It is enough to give him the privileges of such an one, and to allow him to be relieved from individual responsibility, by accounting for the effects of the deceased. 'I o the extent of these, he is liable, and ought to be made to account to those legally entitled to claim them. The law regards with jealousy, and even aversion, the officious intermeddling with a dead man’s estate. The defendant here, acted, no doubt, bona fide, in his attempt to secure his claim under his distress warrant, but as it gave him no legal authority to take into his possession the effects of the deceased, he must be subjected to the liabilities of an executor de son tort; and, therefore, bound to distribute them according to the provisions of the Act just noticed; and under which the plaintiffs have a preference over all other creditors.
*519 For the purpose of carrying these views into effect, a new trial is granted.
RICHARDSON, O'NEALL, EVANS, and WARDLAW, JJ. COflcurred.